UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sherry M. Lahti,

        Plaintiff,

v.

Countrywide Bank, FSB, Countrywide
Home Loans Division; Bank of America,
National Association; Manley Brothers
Construction; Manley Realty, Inc.;
John Skjerping, individually and as
Vice President of Manley Brothers
Construction and Sales Agent for Manley
Realty, Inc.; Daniel J. Roza, individually
and as CFO of Manley Brothers Construction;
Kevin Manley, individually and as CEO of
Manley Brothers Construction and Manley
Realty, Inc.; First American Title Company;
John Doe; and Company XYZ,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-629 ADM/FLN

---

Jennifer L. Urban, Esq., Urban Law Group, PLLC, St. Louis Park, MN, on behalf of Plaintiff.

Abraham T. Schwager, Esq., and Brent C. Snyder, Esq., Snyder & Brandt, P.A., Minneapolis, MN, on behalf of Defendant John Skjerping.

Bryan R. Battina, Esq., and William K. Forbes, Esq., Battina Law, PLLC, Minneapolis, MN, on behalf of Defendant Daniel J. Ruza.

---

## I. INTRODUCTION

On September 19, 2012, the undersigned United States District Judge heard oral argument on Defendant John Skjerping's ("Skjerping") Motion to Dismiss [Docket No. 40] and Defendant Daniel J. Ruza's ("Ruza")[1] Motion to Dismiss [Docket No. 36]. For the reasons

---

[1] Although the Complaint names Daniel J. Roza as a defendant, Ruza corrected the spelling of his last name in his present motion. See Mem. of Law in Support of Ruza's Mot. to

stated below, both motions to dismiss are granted.

## II. BACKGROUND[2]

In September 2007, Plaintiff Sherry M. Lahti ("Lahti") and her boyfriend Chad Henjum ("Henjum") first met Skjerping while touring a Manley Brothers Construction ("MBC") home. Compl. ¶¶ 26–27. Acting as a realtor and agent of MBC, Skjerping informed Lahti and Henjum that they had been selected to receive a house at cost, a discount of approximately $150,000. Id. ¶¶ 28–29. In October 2007, Lahti and Henjum signed the original purchase agreement for a new house in the amount of $493,967. Id. ¶ 31.

In October 2007, Lahti and Henjum were referred by MBC or Manley Realty, Inc. ("MR") to a lender, but Lahti and Henjum did not qualify for construction financing through that lender. Id. ¶ 34. MBC or MR then agreed to provide construction financing for Lahti and Henjum, with Lahti and Henjum required to secure conventional financing upon completion of the home. Id. ¶ 35. The house was completed in March 2008. Id. ¶ 48. In April 2008, Lahti and Henjum were denied conventional home mortgages. Id. ¶¶ 49–50. On May 2008, Skjerping informed Henjum that MBC or MR would still be able to close the transaction without the financing, but Henjum's name would need to be removed from the purchase agreement and loan. Id. ¶ 55. Lahti signed the new purchase agreement, which was backdated to October 7, 2007. Id. ¶¶ 57, 59.

The closing occurred on May 6, 2008, with several people present, including Lahti,

---

Dismiss [Docket No. 38] at 2.

[2] In considering Skjerping's and Ruza's motions to dismiss, the Court takes the facts alleged in Lahti's Complaint [Docket No. 1] to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Henjum, and Ruza.  Id. ¶¶ 64–65.  The loan application falsely stated that Lahti's income was $10,500, nearly double her actual monthly salary.  Id. ¶ 63.  Lahti recognized the discrepancy and told those present at the closing that her income was overstated, but she still executed both the mortgage and promissory note as presented.  Id.  Henjum, who had done some construction work on the house himself, was presented by Ruza with a cashier's check of $29,038, the amount needed for the closing.  Id. ¶¶ 68–69.

Lahti was the only person who made payments on the mortgage; Henjum left the house and did not assist with payments.  Id. ¶ 73.  Sometime after December 2008, Lahti became delinquent in mortgage payments and was threatened with foreclosure by Bank of America, N.A., which had assumed her mortgage.  Id. ¶ 76.  On March 12, 2012, Lahti filed this Complaint.

### III.  DISCUSSION

**A.  Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs a motion to dismiss for failure to state a claim.  In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true.  See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]."  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief.  See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a). Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). This plausibility determination is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Pro se complaints are to be "liberally construed," Estelle v. Gamble, 429 U.S. 97, 106 (1976), and held to "less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). However, "such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

**B. Analysis**

Lahti's Complaint originally included a total of ten causes of action, with seven causes of action alleged against Defendants Ruza and Skjerping. Lahti subsequently voluntarily dismissed Counts 3, 4, 8, and 10, leaving only three remaining counts against Ruza and Skjerping: fraud (Count 5); fraud in the inducement (Count 6); and breach of contract (Count 9). Both Defendants Ruza and Skjerping move to dismiss these remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1. Lahti's Fraud Claims (Counts 5 and 6)

Counts Five and Six of Lahti's Complaint allege that Ruza and Skjerping committed fraud by promising Lahti would be able to afford the mortgage and by stating that they would "take care of any problems regarding closing or affordability." Compl. ¶¶ 173, 208. Ruza and Skjerping argue that Lahti has failed to plead fraud with sufficient particularity under Rule 9 of the Federal Rules of Civil Procedure.

The elements of fraud are: (1) a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of its falsity or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) which does cause the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance. Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C., 736 N.W.2d 313, 318 (Minn. 2007). In the context of contract negotiations, the elements of fraud in the inducement are essentially the same as those for fraud. See, e.g., Vandeputte v. Soderholm, 216 N.W.2d 144, 146 (Minn. 1974). Moreover, a fraud in the inducement claim succeeds only when the defendant has not met the obligations of the contract. Wixon Jewelers, Inc. v. Di-Star, Ltd., 218 F.3d 913, 914 (8th Cir. 2000) (citing Vandeputte, 216 N.W.2d at 147); ADT Sec. Svcs., Inc. v. Swenson, Civ. No. 7-2983, 2011 WL 4396918, at *6 (D. Minn. Sept. 21, 2011) ("[A] party's compliance with contractual obligations is a relevant factor in evaluating claims for fraudulent inducement.") (citations omitted).

Fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); see, e.g., Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). This heightened particularity standard requires pleadings to allege the "who, what, where, when, and how" of the fraud. United States ex. rel.

Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted). This heightened particularity requirement "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003).

Lahti's claims of fraud against Ruza and Skjerping do not adequately state a claim under Rule 8, and they fail the heightened pleading standard of Rule 9(b). Lahti has not alleged that she actually relied on the allegedly false statements. "Minnesota courts uniformly require plaintiffs to show actual reliance in order to recover for fraud." In re Emp. Benefit Plans Secs. Litig., Civ. No. 4-92-41, 1992 WL 12618092, at *9 (D. Minn. July 27, 1992); see Davis v. Re-Trac Mfg. Corp., 149 N.W.2d 37, 39 (Minn. 1967) (requiring actual reliance in a fraud claim). Lahti knew that the closing documents significantly overstated her income, see Compl. ¶ 63, so she could not have relied on those numbers even if Ruza or Skjerping had assured her she could pay for the mortgage or that they would take care of any problems during the closing. Lahti does not sufficiently allege that she actually relied upon the statements of Ruza of Skjerping, and has thus failed to adequately plead a necessary element of fraud.

Additionally, Lahti has identified no false statements made by Ruza or Skjerping. Notably, she does not identify specific statements made by either Ruza or Skjerping, and she fails to make individualized allegations against either of them. The fraudulent representations allegedly made by Ruza and Skjerping are both statements concerning future events — Lahti's ability to afford the mortgage and Ruza or Skjerping's promise to take care of closing issues. See Compl. ¶¶ 173, 208.

> It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud

6

> merely because the represented act or event did not take place. It
> is true that a misrepresentation of a present intention could amount
> to fraud. However, it must be made affirmatively to appear that
> the promisor had no intention to perform at the time the promise
> was made.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 368–69 (Minn. 2009) (quoting Vandeputte, 216 N.W.2d at 147). Lahti has not alleged that Ruza or Skjerping had no intention to perform as suggested by either of these statements at the time they were allegedly made. Accordingly, Lahti has failed to sufficiently allege a necessary element of fraud.

Furthermore, Lahti's claim of fraud in the inducement fails because neither Ruza nor Skjerping were parties to either the Note or the Mortgage. Therefore neither Defendant could have breached either agreement. See Wixon, 218 F.3d at 914 ("For a fraud in the inducement claim to succeed, the defendant must not have met the obligations of the contract . . . ."). Because Lahti has failed to provide individualized, factual support for her claims of fraud against Ruza and Skjerping, those claims fail.

### 2. Lahti's Breach of Contract Claim (Count 9)

Lahti's breach of contract claim in Count Nine fails because neither Skjerping nor Ruza were party to a contract with her. In Minnesota, an agent who contracts on behalf of his principal is not personally liable under the contract. Paull v. Columbian Nat'l Fire Ins. Co., 213 N.W. 539, 541 (Minn. 1927). Skjerping signed the Purchase Agreement, but he did so as an agent for MR. See Schwager Aff. [Docket No. 43] Ex. 1. Similarly, Ruza signed the closing documents in the capacity of CFO of MBC. See Pl.'s Mem. in Opp'n [Docket No. 48] Exhibit 12 at 5, 13, 24. Lahti dealt with both Skjerping and Ruza as agents, not as parties to a contract with her. Because Skjerping and Ruza are not parties to a contract with Lahti, Lahti's breach of

7

contract claim necessarily fails.[3]

### 3. Amended Complaint

At oral argument, Lahti's counsel requested leave to amend the Complaint. Both Skjerping and Ruza objected. When not requested under Rule 15(a)(1) as a matter of course, a party may amend a complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id. Parties do not have an absolute right to amend their pleadings. United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005) (citation omitted). A district court may deny the motion for leave to amend if compelling reasons exist, including futility of the amendment. Hammer v. City of Osage Beach, MO, 318 F.3d 832, 844 (8th Cir. 2003).

Lahti's request for leave to amend is denied because it would be futile. Lahti has voluntarily dismissed four of the causes of action against these two Defendants. Amending the Complaint to revise the breach of contract claim would be futile because neither Skjerping nor Ruza were a party to any contract in dispute. As discussed previously, Lahti's fraud claims fail not merely because they have been insufficiently pleaded, a deficiency which perhaps could be remedied by an amended pleading. Rather, both fraud claims fail because Lahti cannot demonstrate she relied on any statements by either Defendant. Additionally, since Ruza and Skjerping were not parties to any contract, it would be futile for Lahti's fraud in the inducement claim to be amended. For these reasons, the Court denies Lahti's request for leave to amend her

---

[3]In an October 5, 2012 Letter [Docket No. 59], Lahti's counsel states that new and forthcoming evidence supports her argument to pierce the corporate veil. Since all claims against Ruza and Skjerping fail for other reasons, this Letter does not change the Court's analysis.

8

Complaint.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant John Skjerping's Motion to Dismiss [Docket No. 40] is **GRANTED**;

2. Defendant Daniel J. Ruza's Motion to Dismiss [Docket No. 36] is **GRANTED**; and

3. All counts against Defendants John Skjerping and Daniel J. Ruza in Plaintiff Sherry M. Lahti's Complaint [Docket No. 1] are **DISMISSED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 10, 2012.